USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/23/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EDWARD SAUNDERS,                                            :
                                                           :
                                        Plaintiff,         :
                                                           :
        -against-                                          :          1:20-cv-5805-GHW
                                                           :
NEW YORK CONVENTION CENTER                                 :          MEMORANDUM OPINION &
OPERATING CORPORATION *d/b/a* Jacob K.                     :                   ORDER
Javits Convention Center, NEW YORK CITY                    :
DISTRICT COUNCIL OF CARPENTERS                             :
                                                           :
                                        Defendants.        :
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

         In January of 2016, Edward Saunders filed a complaint with the Public Employee Relations

Board (the "PERB") after experiencing years of discrimination by his employer, the New York

Convention Center Operating Corporation (the "Javits Center"), and his union, the New York City

District Council of Carpenters (the "Carpenters Council").  In July of 2020, he filed this suit, alleging

that his decision to file the PERB complaint put a target on his back and led his coworkers and

superiors to avoid working with him, call him names, and vandalize his car, culminating in his

termination in April of 2018.  He asserts claims of discrimination, retaliation, and hostile work

environment against his employer and the union under Sections 1981 and 1983.  Defendants have

each moved to dismiss the claims against them.  Because Mr. Saunders has failed to plead that any

breach of the union's duty of fair representation was influenced by discriminatory animus, the

Carpenters Council's motion to dismiss the Section 1981 claim against it is granted its entirety.  And

because Section 1983 claims do not permit vicarious liability and Mr. Saunders has not pleaded facts

that support the attribution of the conduct of low-level Javits Center employees to the Javits Center,

Mr. Saunder's hostile work environment claim is dismissed.  However, because Mr. Saunders is not

precluded from relitigating his discrimination and retaliation claims against the Javits Center that

were first raised before the New York State Division of Human Rights (the "NYSDHR"), Mr.

Saunders' discrimination and retaliation claims against the Javits Center may proceed.

## II.    BACKGROUND[1]

### A.  Mr. Saunders' Employment at the Javits Center as a Carpenter[2]

Defendant New York Convention Center Operating Corporation, doing business as the

Jacob K. Javits Convention Center, is a public benefit corporation and subdivision of New York

State.  Dkt. No. 34, Amended Complaint ("AC"), ¶¶ 5–6.  It operates a large convention center in

Manhattan.  *Id.*  Edward Saunders ("Plaintiff") is an African American man who was hired as a

carpenter by the Javits Center in 1995.  *Id.* at ¶¶ 4, 13.  Plaintiff was required to join the New York

City District Council of Carpenters, a body of nine local unions, in order to remain employed by the

Javits Center.  *Id.* at ¶¶ 10, 14.

Shortly after he was hired in 1995, Plaintiff noticed that certain Javits Center employees who

were Carpenters Council members subjected him and other African American employees to

discriminatory comments and conduct.  *Id.* at ¶ 20.  He alleges that the Carpenters Council, "a

powerful union with significant influence and control over employee relations," "did little or nothing

to change the situation."  *Id.*  Plaintiff alleges that African American employees were often

confronted by foremen for not wearing their tool belts and subsequently removed from a show's

schedule, but that white employees were not confronted or punished for the same mistake.  *Id.* at

---

[1] Except as otherwise noted, the following facts are drawn from the amended complaint.  The Court "accept[s] all factual allegations in the [amended] complaint and draw[s] all reasonable inferences in the plaintiff's favor."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  To assess collateral estoppel, some background facts are drawn from *Saunders*, 52 P.E.R.B. ¶ 4565 (2019) (Dkt. No. 43-1) (the "PERB Decision") and Dkt. No. 43-2, Affirmation of Joseph A. Saccomano, Jr., in support of the Javits Center's Motion to Dismiss, NYSDHR FOIL Request ("NYSDHR FOIL").  As explained below, the Court takes judicial notice of the PERB Decision and NYSDHR FOIL records because a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."  *Evans v. New York Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (citations omitted); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine what statements [the documents] contained—but . . . not for the truth of the matters asserted." (internal quotation marks omitted)).
[2] As explained below, factual allegations regarding events occurring before July 28, 2016, are time-barred but are included in this section as background information.

¶ 22.  Mr. Saunders alleges that in 1998, he complained to the Javits Center about being called "a monkey" while at work.  *Id.* at ¶ 29.

The complaint recounts three incidents in 2017 and 2018 in which other African American employees were sent home early after they got into arguments with white employees.  *Id.* at ¶¶ 25–28.  Mr. Saunders alleges that the white employees involved were "invariably not punished."  *Id.*  Mr. Saunders also alleges that African American employees who threatened to sue the Javits Center were terminated, while white employees who threatened to sue were not terminated.  *Id.* at ¶ 30.  The only factual detail that the complaint offers in support of this blanket assertion is that "[f]or example, [a] white employee . . . has repeatedly filed or threatened to file complaints against the Javits Center because of his disputes with its management.  But he has never been fired or seriously penalized."  *Id.* at ¶ 31.

African American employees were targeted for reduced hours and given lower priority to work on trade shows than white employees with less seniority or experience.  *Id.* at ¶ 34.  In 2015, Plaintiff was assigned to work over 150 hours less than in each of the prior two years, but white employees did not have their hours reduced to that extent.  *Id.* at ¶ 35.  Plaintiff alleges that the Carpenters Council "was consistently derelict in its avowed duty to provide fair representation to Plaintiff and other African Americans in the face of such discriminatory mistreatment, particularly during the internal grievance process."  *Id.* at ¶ 36.

Plaintiff alleges that African American employees were publicly shamed when they failed to pay union dues.  African American employees were aggressively confronted and sent home early for the day if they were late in paying their union assessment fees, but white employees who were similarly late in paying assessment fees were not sent home early.  *Id.* at ¶¶ 23–24.  Names of African American members of the Carpenters Council who were late in paying dues were highlighted on the sign-in sheet, but the names of white members who were also late were not highlighted.  *Id.* at ¶ 37.  In August of 2015, shop steward John Diodato highlighted Plaintiff's name on the sign-in sheet.  *Id.*

Plaintiff thought it was a joke because he had paid his union dues and laughed, at which point Mr. Diodato asked menacingly, "do you have a problem with me?"  *Id.* at ¶¶ 37–38.

African American employees who signed in late to work were cut from the schedule and sent home, but white employees were allowed to sign in late and continue working.  *Id.* at ¶ 39.  In September of 2015, Plaintiff was about to sign in a few minutes late when David Maffia, a carpenter and foreman, took the sign-in sheet away and refused to let Plaintiff sign.  *Id.* at ¶¶ 40–41.  Plaintiff attempted to submit a formal written grievance about Mr. Maffia's conduct through his shop stewards, but the shop stewards never filed the grievance.  *Id.* at ¶ 43.

Christina McMahon, the Javits Center's Senior Vice President of HR & Labor Solutions, met with Plaintiff on or about October 1, 2015 to discuss the grievance that Plaintiff had attempted to file.  *Id.* at ¶ 45.  A few days later, the Javits Center demoted Plaintiff to an apprentice role, which involved reduced work hours and more menial tasks which did not involve performing carpentry. *Id.* at ¶ 46.  Plaintiff was also excluded from any further assignments from two major convention booth contractors, which had previously assigned Plaintiff a position as lead carpenter.  *Id.* at ¶ 48. In response to his demotion, Plaintiff filed another grievance with the Javits Center and met with an HR representative, together with a shop steward, but nothing was done to change or reverse Plaintiff's demotion.  *Id.* at ¶ 49.

### B.  Mr. Saunders' PERB Complaint and Subsequent Proceedings

On January 30, 2016, Plaintiff filed an improper practice charge against the Javits Center and Carpenters Council with the PERB, alleging that the Javits Center "reduced his hours and spread rumors about him because he filed a complaint" and alleging that the Carpenters Council "failed to support him in a meeting with the Javits Center and failed to file a grievance on his behalf."  *Id.* at ¶ 50; PERB Decision at 2.  In response to Plaintiff's complaint to the PERB, the Javits Center and Carpenters Council each filed answers denying the material allegations of the charges.  PERB Decision at 2.

4

A hearing was held by an administrative law judge (the "ALJ") on March 28, 2017, and July 27, 2017. *Id.* All parties were present, and represented by counsel. *Id.* All parties were able to call witnesses to testify and to cross-examine them. The Carpenters Council presented two witnesses, Mr. Diodato, a shop steward, and Jeremy Milin, a business representative. *Id.* The Javits Center called Jody Channer, the Assistant Director for Labor Solutions. *Id.* At the hearing, Plaintiff testified on his own behalf about how unlike other employees, he was not allowed to sign in late and was instead sent home early. *Id.* Mr. Diodato contested Plaintiff's testimony, stating that he applied the same rule about signing in late to all employees. *Id.* at 3.

Plaintiff and the Carpenters Council also disagreed on the events surrounding Mr. Maffia's asserted refusal to let Plaintiff sign in late in September of 2015. Plaintiff testified that he met with Mr. Diodato to complain about Mr. Maffia, but Mr. Diodato testified that he never met with Plaintiff and that he was never asked by Plaintiff to file a grievance. *Id.* Plaintiff filed a grievance on his own. *Id.* A meeting with human resources and Mr. Diodato about the grievance was held in October of 2015. *Id.* at 4. Plaintiff testified that at the meeting, Mr. Diodato took sides against him, while Mr. Diodato testified that he investigated Plaintiff's allegations after the meeting even though Plaintiff had not asked him to do so. *Id.* Plaintiff stated that after the meeting, his work hours decreased and his coworkers shunned him for complaining to human resources. *Id.* at 6. Ms. Channer, who was responsible for assigning work to carpenters, testified that the Javits Center had no control over who was assigned as lead carpenter for an event and that Plaintiff's work hours decreased partly because the Javits Center hired more carpenters to reduce the cost of overtime. *Id.* at 6–7. During cross-examination, Mr. Diodato testified that he was just doing his job as shop steward when he advised Plaintiff that he was late in paying his union dues. *Id.* at 6.

The ALJ issued an opinion on November 4, 2019. *Id.* at 1. Regarding the allegation against the Carpenters Council, the ALJ ruled that Plaintiff had not provided enough evidence to show that the Carpenters Council had taken sides against Plaintiff and noted that the fact that Mr. Diodato

investigated Plaintiff's complaint against Mr. Maffia demonstrated that the Carpenters Council did not harbor ill will against Plaintiff. *Id.* at 8. Furthermore, the ALJ determined that Mr. Diodato had not acted arbitrarily, discriminatorily, or in bad faith in reminding Plaintiff about his late dues or during their meeting with Human Resources in October of 2015. *Id.* at 9.

Regarding the allegations against the Javits Center, the ALJ concluded that Plaintiff had not provided sufficient evidence to show that the Javits Center had taken any action against Plaintiff because he had filed a grievance or participated in a grievance meeting in 2015. *Id.* The ALJ noted that, contrary to Plaintiff's argument that he received less work as lead carpenter after filing his grievance, data submitted by the Javits Center indicated that Plaintiff's working hours had always fluctuated over the years. *Id.* Finally, the ALJ determined that the Javits Center had presented credible business reasons establishing why Plaintiff's work assignments were sometimes reduced after 2015. *Id.* The record was devoid of evidence demonstrating that anyone at the Javits Center was motivated by improper purposes or took adverse employment action against Plaintiff because of the grievance, nor was there evidence that the Javits Center caused or amplified rumors about Plaintiff. *Id.* at 12. Finally, the ALJ found that Mr. Maffia was not a Javits Center employee, but rather an employee of a contractor, so none of the allegations regarding Mr. Maffia's actions against Plaintiff could be attributed to the Javits Center. *Id.*

### C. Mr. Saunders Continues to be Harassed

While the PERB case was being litigated, Plaintiff was harassed at work. His car was repeatedly vandalized and Plaintiff's white coworkers refused to work near him and made racist jokes and comments in his presence. AC ¶ 51. Around May or June of 2017, Plaintiff was instructed to take a boom operator certification test. *Id.* at ¶¶ 52–54. Although he successfully operated the boom in less time than other test takers, he was the only person to receive a failing grade. *Id.*

On one occasion, Plaintiff encountered white Carpenters Council members and Javits Center employees in the employee locker room, one of whom said that "rats get hurt" in reference to Plaintiff's grievance against Mr. Maffia. *Id.* at ¶ 55. In June of 2017, Mr. Maffia and Marko Bulic were operating a boom to position a large exhibition booth sign and attempted to swing the sign to hit Plaintiff's head. *Id.* at ¶ 56. Plaintiff complained about the incident to "Defendants," but Mr. Maffia and Mr. Bulic were not penalized. *Id.*

In early 2018, two white Javits Center foremen, Steven Ramirez and "Ozzie," moved Plaintiff's equipment, forcing him to spend 30–45 minutes searching for it. *Id.* at ¶ 57. When Plaintiff confronted them about the equipment, Mr. Ramirez and Ozzie called him a "black rat" and said, "you'll get yours one day." *Id.* at ¶ 58. Mr. Ramirez had previously used slurs or had arguments with African American employees but was never penalized despite complaints from other employees about his behavior. *Id.* at ¶ 59.

On March 19, 2018, Plaintiff was prevented from doing his work when Mr. Maffia and Mr. Bulic blocked his way with a lifting machine. *Id.* at ¶ 61. Plaintiff recorded the incident on his phone. *Id.* On or about March 26, 2018, Mr. Bulic approached Plaintiff and yelled "THE NEXT TIME YOU FILM ME, YOU'RE GOING TO BE DEAD OUTSIDE!" *Id.* at ¶¶ 62–63. Plaintiff responded in kind: "If you want to kill me now, why wait, let's go." *Id.* at ¶ 63. Afraid, Plaintiff left, and gathered his belongings. *Id.* at ¶¶ 64–65. His shop steward accompanied him to a Javits Center human resources representative to complete a grievance—presumably against Mr. Bulic. *Id.* at ¶ 65. Plaintiff filed the grievance report himself without help from the shop steward who had accompanied him. *Id.* at ¶ 65. On his way out of work, Mr. Bulic taunted Plaintiff and "attempted to instigate a fight with him." *Id.* at ¶ 66. Plaintiff simply walked away. *Id.*

A few days later, Ms. McMahon called Plaintiff and informed him that he was being suspended without pay until further notice. *Id.* Plaintiff reached out to the Inspector General of the

Carpenters Council, who promised to look into the matter, but Plaintiff never heard back from him or anyone else from the Carpenters Council. *Id.* at ¶ 67.

### D. Mr. Saunders is Terminated

On or about April 11, 2018, the Javits Center terminated Plaintiff by letter and a telephone call from Ms. McMahon. AC ¶ 68. Plaintiff alleges that he "attempted to get help" from the Carpenters Council, by contacting the "Business Agent" responsible for the Javits Center. *Id.* The agent respond that that if he wanted to discuss the termination, he could only speak to the business agent at 5:00 in the morning. *Id.* Plaintiff contends that "this was obviously done to effectively prevent Plaintiff from speaking to the Union about his termination." *Id.*

### E. Mr. Saunders Files a NYSDHR Complaint

On March 30, 2018, Plaintiff filed a verified complaint with the NYSDHR charging the Javits Center with an "unlawful discriminatory practice relating to employment because of race/color, and opposed discrimination/retaliation . . . ." NYSDHR FOIL at ECF p. 3. Mr. Saunders' verified complaint described his interaction with Mr. Bulic—colorfully described as "Marco the Monster." *Id.* at ECF 12. Plaintiff's description of the incident in his complaint is largely consistent with that contained in his complaint in this case—Mr. Bulic accosted Plaintiff and Plaintiff did nothing in response.[3]

The NYSDHR's file, provided in response to a FOIA request by defense counsel, contains records of requests by the NYSDHR for information from the Javits Center, and the Javits Center's written responses to those inquiries. *Id.* at ECF pp. 30–134; 138–139. The Javits Center's responses—provided after Plaintiff's termination—included a detailed factual narrative describing its

---

[3] Not all of the allegations in Plaintiff's verified NYSDHR complaint are consistent with the allegations in the amended complaint. In particular, in the amended complaint, Plaintiff alleges that he filed a grievance report about the incident without the assistance of his union representative. AC at ¶¶ 65-66. In his verified NYSDHR complaint, Plaintiff writes the following: "During the meeting with the Representative, Vinny sat next to me explain my story, and give the identity of Marco (I didn't know his last name so he told the rep for me)." NYSDHRL FOIL at ECF 12.

view of the interaction between Plaintiff and Mr. Bulic, which ultimately led the Javits Center to terminate Plaintiff.  In the Javits Center's version of events, Plaintiff, not Mr. Bulic, initiated a physical contact after a verbal exchange.  "As captured by the video surveillance, [Plaintiff] initiated physical contact with Bulic by removing a ladder which was blocking his path to Bulic, determined to make his way toward him.  Complainant then lunged towards Bulic, and two other carpenters intervened to restrain Complainant."  *Id.* at ECF p. 111.  The Javits Center also provided the videotape of the incident to the NYSDHR.

The NYSDHR file provided in response to defense counsel's FOIL request does not include any evidence presented by Plaintiff.  It contains a July 22, 2018 letter from him, requesting an additional 60 days "to find counsel and collect witness names . . . ," but includes no written submissions on his behalf apart from the verified complaint.  *Id.* at ECF p. 142.  There is no indication in the NYSDHR records presented to the Court, other than a single fax cover sheet, that Mr. Saunders found counsel to represent him before the NYSDHR.  There is no indication that the NYSDHR acted on Mr. Saunder's request for an extension of time.  Given that the NYSDHR issued its determination letter on August 30, 2018—less than 60 days after Plaintiff's request—it appears that the request was effectively denied.

The NYSDHR issued its determination letter on August 30, 2018.  The determination letter concludes the following:  "After investigation, and following an opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of."  *Id.* at ECF p. 4.  The letter concludes that there is "a lack of evidence in support of the complainant's allegation of race/color discrimination."  *Id.*  The report specifically concluded that "complainant failed to establish a prima facie complaint of retaliation as he has not shown, or even alleged, that he opposed discrimination prior to the termination of his employment by respondent."  *Id.*

9

Surprisingly, despite the NYSHDR's conclusion that no probable cause existed for Plaintiff's complaint, the NYSDHR determination latter contains a conclusion that the reason provided by the Javits Center for Plaintiff's termination was a pretext for racial discrimination against him.

> The respondent asserts that complainant was suspended and terminated for the legitimate, non-discriminatory reason that he was believed to have initiated physical contact with a co-worker and engaged in physical aggression. Our investigation has found this non-discriminatory reason for suspending and terminating complainant's employment *to be unworthy of credence and a pretext for race/color discrimination.*

*Id.* at ECF pp. 4–5 (emphasis added). Then, the NYSDHR letter goes on to state the arguably contradictory conclusion that its "investigation failed to uncover sufficient evidence to establish a causal nexus between the respondent's treatment of the complainant and his race/color or any opposition to discrimination. The record does not support a finding of probable cause in this case." *Id.* at ECF 5. The determination letter does not provide more detail regarding how the NYSDHR reconciled its conclusion that the Javits Center's non-discriminatory reason for suspending Plaintiff was pretext for discrimination with its top-level conclusion that there was no probable cause.

It is unclear whether the NYSHDR records presented by the Javits Center to the Court constitute the complete record of the NYSDHR proceedings. The case file presented to the Court does not contain interview notes. Nor does it show that the Plaintiff provided evidence other than that included in his complaint. Nothing in the records presented suggest that the NYSDHR conducted a hearing or other adversarial process prior to making its determination.

### III.   PROCEDURAL HISTORY

Plaintiff initiated this lawsuit on July 28, 2020. Dkt. No. 5. In Count One of the Amended Complaint, Plaintiff asserts claims under 42 U.S.C. § 1981 against the Carpenters Council for enforcing and participating in discriminatory practices against Plaintiff in retaliation for his prior complaints, particularly by allowing or encouraging the Javits Center to terminate Plaintiff's employment. AC ¶¶ 79–81. In Count Two, Plaintiff asserts claims under 42 U.S.C. § 1983 against the Javits Center for disparate conditions of employment because of his race or in retaliation for his

prior complaints about its racially discriminatory mistreatment, which culminated in his termination in 2018. *Id.* at ¶¶ 87–88.

On October 27, 2020, Defendants each moved to dismiss the claims against them. Dkt. Nos. 29, 32. In response, Plaintiff amended his complaint on November 17, 2020. Dkt. No. 34. Again, Defendants each moved to dismiss claims against them on January 25, 2021. Dkt. Nos. 41, 45; *see also* Dkt. Nos. 44 ("JC Mot. to Dismiss"), 46, ("CC Mot. to Dismiss"). Specifically, the Javits Center seeks to dismiss the § 1983 claims against it and the Carpenters Council seeks to dismiss Plaintiff's § 1981 claims against it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposed the motions on February 17, 2021. Dkt. No. 47 ("Opp'n"). Defendants each replied on February 23, 2021. Dkt. Nos. 48 ("JC Reply") 49 ("CC Reply").

## IV.   LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept" as true a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at

545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility.  *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006).  But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference."  *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint."  *Id.* (quotation and brackets omitted).  A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).  A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough."  *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

The Court has considered the PERB records.  The PERB decision is not attached to the Amended Complaint, but it is explicitly incorporated into it by reference.  AC ¶ 50.  Additionally, the PERB complaint is integral to the Amended Complaint because Plaintiff relied on it to frame his complaint in this suit, alleging that subsequent harassment and retaliation happened in response to his filing of the PERB complaint.  *See id.* at ¶¶ 50–51.  Courts in this Circuit regularly conclude that administrative charges are integral to a plaintiff's complaint if the plaintiff had access to the administrative documents when framing the allegations in the complaint, the plaintiff's complaint depends, in part, on the scope and effect of these documents, and no party disputes the accuracy or relevance of the documents.  *See, e.g., Thomson v. Odyssey House*, No. 15-cv-3875, 2015 WL 5561209, at *3 n.7 (E.D.N.Y. Sept. 21, 2015) (collecting cases), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).

In addition to the documents integral to the complaint and documents incorporated by reference into the complaint, courts may also consider "matters of which judicial notice may be

taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).  Even if the PERB

records were not integral to the Amended Complaint, they could still be considered by the Court

because "[j]udicial notice of public records . . . is clearly appropriate." *In re Enron Corp.*, 379 B.R.

425, 431 n.18 (S.D.N.Y. 2007).  However, "when a court takes judicial notice of documents in the

public record at the Motion to Dismiss stage, it considers them 'only to establish their existence and

legal effect, or to determine what statements they contained not for the truth of the matters

asserted.'" *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, 96 F. Supp. 3d

182, 206 (S.D.N.Y. 2015) (quoting *Liang v. City of New York*,  No. 10-cv-3089, 2013 WL 5366394, at

*5 (E.D.N.Y. Sept. 24, 2013)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court

takes judicial notice, it does so in order to determine what statements [the document] contained—

but . . . not for the truth of the matters asserted." (internal quotation marks omitted)).  Additionally,

a court "may take judicial notice of the records of state administrative procedures, as these are public

records, without converting a motion to dismiss to one for summary judgment." *Evans v. New York*

*Botanical Garden*, No. 02-cv-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (citations

omitted).  Accordingly, the Court takes judicial notice of the DHR's rulings on Plaintiff's complaint

at the Rule 12(b)(6) stage in this matter because DHR records are public records.  *See, e.g., Macer v.*

*Bertucci's Corp.*, No. 13-cv-2994, 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) (holding that

"courts regularly take [judicial] notice of NY[S]DHR filings and determinations relating to a

plaintiff's claims"); *Fraticelli v. Good Samaritan Hosp.*, No. 11-cv-3376, 2012 WL 4069292, at *3

(S.D.N.Y. July 23, 2012) ("The Court takes judicial notice of plaintiff's EEOC charge filed with the

NYSDHR" in ruling on the motion to dismiss.).

//


//

13

## V.   DISCUSSION

### A.   The Carpenters Council's Motion to Dismiss Plaintiff's Claims Under § 1981

#### i.   Plaintiff's Allegations Predating July 28, 2016 Are Time-Barred

##### 1.   Legal Standard

Given the four-year statute of limitations for § 1981 claims, Plaintiff is barred from litigating allegations predating July 28, 2016.   Claims brought under § 1981 are subject to a four-year statute of limitations period.   *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); *see, e.g., Isbell v. City of New York*, 316 F. Supp. 3d 571, 585 (S.D.N.Y. 2018) (concluding that the plaintiffs' § 1981 claims based on conduct occurring more than four years before the date they filed the complaint were time-barred).   The four-year statute of limitations applies to claims against a union brought under § 1981.   *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) ("[A] union may also face liability under Title VII, § 1981, and the ADA if it breaches its duty of fair representation.   As to such claims, the statute of limitations under Title VII, § 1981, and the ADA— not the six-month statute of limitations for breach of duty of fair representation—controls.").[4] However, "expiration of the limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'"   *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (noting that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act" when retaliation allegations extend beyond the limitations period (citation omitted)).

---

[4] An allegation of discriminatory intent has a substantial impact on the relevant statute of limitations—a breach of the duty of fair representation, uncoupled with a suggestion of discriminatory animus by the union, has only a six month statute of limitations.   When coupled with an allegation of discriminatory animus by the union, the statute extends up to the four years for a violation of § 1981.

2. <u>Application</u>

Because Plaintiff commenced this action on July 28, 2020, the § 1981 claim is barred to the

extent that it is based on events that took place before July 28, 2016.  Nonetheless, Plaintiff has

made a timely allegation of an adverse employment action—his termination on April 11, 2018—and

the Court may consider his other time-barred allegations as background evidence.  *See, e.g., Davis-*

*Garett*, 921 F.3d at 42 (holding that "the district court erred in ruling that it could not consider [time-

barred] events in connection with assessment of liability on the [plaintiff's] hostile work

environment claim and that it could not consider such events as background for her claim of

retaliation.").  Thus, Plaintiff is barred from litigating claims for adverse employment actions

predating July 28, 2016, but the Court has considered all allegations in the Amended Complaint in

evaluating Plaintiff's claims below.

Many of the allegations regarding conduct attributable to the Carpenters Council took place

well before July 2016.  *See* Opp'n at 21–22 (listing allegations regarding the Carpenters Council).

The only conduct of the Carpenters Council within the statute of limitations relates to the union's

response to Plaintiff's termination.

ii. <u>Plaintiff's Discrimination Claim Against the Carpenters Council is Dismissed</u>

1. <u>Legal Standard</u>

Because Plaintiff has failed to adequately plead that the union acted with discriminatory

animus, his claim under Section 1981 is dismissed.  "Section 1981 provides that '[a]ll persons within

the jurisdiction of the United States shall have the same right in every State . . . to the full and equal

benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens.'"  *Littlejohn v. City of New York.*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting 42 U.S.C. § 1981).

"Employment discrimination claims against unions are analyzed differently from claims against

employers, in that claims against unions are grounded in the union's duty of fair representation to its

members."  *Hill v. City of New York*, 136 F. Supp. 3d 304, 339 (E.D.N.Y. 2015), order amended and

supplemented, No. 13-cv-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (citing *Klaper v. Cypress Hills Cemetery*, 10 CV 1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012)).  In order to prevail on his discrimination claim against the union, Plaintiff must plead first, that the union breached its duty of fair representation, and, second, that the union's actions were motivated by animus toward the plaintiff's protected status.  *Id.*; *see also Vaughn v. Am. Tel. & Tel. Co.*, 92 F. App'x 21, 23 (2d Cir. 2004) (summary order) ("To establish a prima facie claim of discrimination against a union in connection with grievance representation, a plaintiff is required to show that:  (1) the [employer] committed a violation of the collective bargaining agreement with respect to plaintiff; (2) the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) there was some indication that the Union's actions were motivated by discriminatory animus.").[5]

To plead a breach of a union's duty of fair representation, "the challenging members must establish two elements.  *First*, they must prove that the union's actions or inactions 'are either arbitrary, discriminatory, or in bad faith.'"  *Vaughn v. Air Line Pilots Ass'n Int'l*, 604 F.3d 703, 709 (2d. Cir. 2010) (emphasis in original) (quoting *Air Lines Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).  "*Second*, the challenging members must 'demonstrate a causal connection between the union's wrongful conduct and their injuries.'"  *Id.* (emphasis in original) (quoting *Spellacy v. Airline Pilots Assn' Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).  Courts reviewing such allegations will be "'highly deferential, recognizing the wide latitude that [unions] need for effective performance of their bargaining responsibilities.'"  *Id.* (quoting *O'Neill*, 499 U.S. at 78).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational.'"  *Id.* (quoting *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted)).  Conduct is irrational only "when it is without a rational basis or explanation."  *Marquez v. Screen*

---

[5] The parties agree on the appropriate legal standard.  *See* Opp'n at 19.

*Actors Guild*, 525 U.S. 33, 45–46 (1998).  "Moreover, '[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.'"  *Vaughn*, 604 F.3d at 709 (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)).

With respect to the requisite showing of animus, "at the pleadings stage of an employment discrimination case, a plaintiff has a 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 310).  One way to show animus on the part of a union is through the "acquiescence theory," to which Plaintiff points in his opposition brief.

"[A] union's tacit acquiescence [in] or ratification [of an employer's discriminatory conduct] . . . can serve as a basis for an employment discrimination claim . . . if the plaintiff sufficiently alleges that this acquiescence or ratification was 'arbitrary, discriminatory, or in bad faith'—that is, if the acquiescence or ratification establishes a breach of the union's [duty of fair representation]."  *Klaper v. Cypress Hills Cemetery*, 10 CV 1811, 2012 WL 959403, at *11-12 (E.D.N.Y. Mar. 21, 2012) (collecting cases); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under . . . § 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities.").  Judge Chen of the Eastern District of New York thoughtfully explained the premise of the acquiescence theory as a pathway to illustrate a union's discriminatory animus, as follows:

> [T]his theory stems from the principle that "[a] § 1981 violation may be established not only via presentation of evidence regarding defendant's affirmative acts, but also by evidence regarding defendant's omissions when defendant is under some duty to act."  In other words, the acquiescence theory permits an inference of discriminatory intent based on the union's disregard of an employer's discrimination.

*Hill*, 136 F. Supp. 3d 304 at 340 (internal citations omitted).

2.  <u>Application</u>

Plaintiff has not adequately pleaded that the Carpenters Council violated § 1981.  First, the complaint does not adequately plead that the union violated its duty of fair representation to him, with the exception of its response to Plaintiff's complaints regarding his suspension and termination. Most of the allegations regarding asserted deficiencies in the union's conduct toward Plaintiff are conclusory.  The specific allegation regarding Plaintiff's filing of a grievance on his own in the company of his shop steward does not plead a violation of the duty of fair representation.  AC ¶ 65. The shop steward accompanied Plaintiff to file a grievance, which Plaintiff was able to accomplish on his own.

However, Plaintiff's allegations that the union did nothing in response to his complaints regarding his suspension, and later termination, are sufficient to plead a violation of the union's duty of fair representation.  A breach of the duty of fair representation "occurs when the union handles a 'meritorious grievance . . . in perfunctory fashion.'"  *Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990) (quoting *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)).  Here, Plaintiff alleges that he brought a grievance regarding his suspension to the union's Inspector General.  AC ¶ 67.  The Inspector General promised to look into the matter, but neither the Inspector General, nor any other representative of the union followed up.  *Id.*  The complaint does not suggest that the union's inaction was the result of an informed decision or tactical error that would benefit from deferential review by the Court.  Instead, the complaint alleges that the union did nothing at all in response to Plaintiff's complaint.  This is sufficient to plead a violation of the duty of fair representation.  *See Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 17-cv-2309, 2020 WL 3104048, at *3 (E.D.N.Y. June 11, 2020) (collecting cases).

The complaint does not adequately plead that the union was motivated by animus toward his protected status.  The complaint relies on conclusory allegations and scattered incidents from Plaintiff's entire history, which do not give rise to even a minimal inference that the union was

motivated by discriminatory animus toward him.  Many of the allegations upon which Plaintiff relies are conclusory—unsupported by factual detail.  *See, e.g.* AC ¶ 36 (the union "was consistently derelict in its avowed duty to provide fair representation to Plaintiff and other African Americans . . . ."); *Id.* at ¶ 20.

Plaintiff points to two specific incidents in 2015 as evidence of the union's discriminatory animus, but neither suffice.  Opp'n at 21.  In August 2015, a shop steward highlighted Plaintiff's name on a sign in sheet to show that he was late in paying his dues.  AC ¶ 37.  Plaintiff pleads without further detail that "[s]uch name-highlighting was done only to African-American members who were late in paying their dues; typically white members who were behind on their dues were not publicly outed in this fashion."  *Id.*  Plaintiff also pleads that in 2015, he was late to the office and so was not allowed to sign in for the day, while the "white employees who were a few minutes late were allowed to sign in without a problem." *Id.* at ¶ 41.  The Carpenters Council reasonably points out that these allegations contain scant facts "by which to assess any Union conduct with regard to such employees and their alleged situations."  CC Mot. to Dismiss at 10.  Even more significantly, these acts predate the alleged violation of the union's duty of fair representation by three years, and were committed by shop stewards who are not alleged to have been at all involved in the allegedly deficient response to Plaintiff's suspension and termination.

While Plaintiff's opposition points to the acquiescence theory as a basis to infer discriminatory animus on the part of the union, his complaint fails to plead factual support for the theory here.  Instead he relies on conclusory allegations and argument.  *See, e.g.* AC ¶ 20 ("Shortly after Plaintiff's hiring [in 1995], he realized that JAVITS CENTER employees who were CARPENTERS COUNCIL members were subjecting him and other African-Americans to . . . discriminatory comments and conduct, and the CARPENTERS COUNCIL . . . did little or nothing to change the situation."); *Id.* at ¶¶ 25, 36.  Plaintiff has failed to plead facts that support an inference that the union's failure to respond to his suspension and termination were motivated by animus.  *See*

*McLeod v. 1199 SEIU United Healthcare*, No. 1:17-cv-7500, 2019 WL 1428433, at *9 ("In order to survive a motion to dismiss, the plaintiff must allege facts supporting an inference of discrimination, and not simply rely on the union's failure to take action."). Accordingly, Plaintiff's § 1981 claim against the Carpenters Council is dismissed.

### B. The Javits Center's Motion to Dismiss Plaintiff's Claims Under § 1983

#### i. <u>Plaintiff is Collaterally Estopped from Relitigating the PERB Decision</u>

##### 1. <u>Legal Standard</u>

Plaintiff had a full and fair opportunity to litigate his improper practice charge before the PERB. Therefore, Plaintiff is collaterally estopped from relitigating matters decided by the PERB. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). "Under federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).

"Collateral estoppel is a narrower species of *res judicata* . . . that holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive on the issues of fact and questions of law necessarily decided therein in any subsequent action." *Vargas v. City of New York*, 2008 WL 361090, at *4 (S.D.N.Y. Feb. 7, 2008) (internal quotation marks, citations, and alterations omitted). "Whether the prior adjudication occurred in the context of an administrative determination . . . or a full-fledged judicial proceeding," collateral estoppel is applicable only if (1) "there is an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) the party or one in privity

had "a full and fair opportunity to contest the decision now said to be controlling." *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153 (1988) (internal quotation marks and citation omitted). "The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. . . .  The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." *Buechel v. Bain*, 97 N.Y.2d 295, 303–04 (2001).

In *University of Tennessee v. Elliott*, the Supreme Court addressed the issue of whether an agency determination, not reviewed by a state court, is entitled to preclusive effect in federal court in an action under Title VII and 42 U.S.C. § 1983.  478 U.S. 788, 790 (1986).  Regarding § 1983 claims, the Supreme Court held "that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 (citation omitted).  In New York, "courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499–500 (1984)).  "It is well established that 'PER[B] acts in a quasi-judicial capacity,' given its power to conduct hearings in which it administers oaths, examines witnesses and documents, takes testimony, receives evidence and issues subpoenas." *Gemerek v. Buffalo Sewer Auth.*, No. 99-cv-8795, 2011 WL 3047737, at *6 (W.D.N.Y. July 25, 2011).

### 2. Application

Here, Plaintiff does not dispute that there is an identity of issues between the PERB proceedings and some of the allegations in the Amended Complaint.  In both the Amended Complaint and the PERB complaint, Plaintiff alleged that the Javits Center discriminated and retaliated against him by reducing his hours and spreading rumors about him because he filed a

grievance about Mr. Maffia in September of 2015.  AC ¶¶ 43–48; PERB Decision at 3–4, 11.  The ALJ determined that there was no evidence demonstrating that either that the Javits Center was motivated by improper considerations or that it took adverse employment action against Plaintiff because of the grievance.  PERB Decision at 12.  Having established an identity of issues, the Court need only determine whether the PERB proceeding afforded Plaintiff a full and fair opportunity to litigate.

Plaintiff had a full and fair opportunity to litigate before the PERB.  In support of his argument against preclusion, Plaintiff argues that his counsel was disbarred in July of 2017 for neglecting several clients' legal matters and failing to account for monies entrusted to him in those matters.  Opp'n at 13; *In re Burns*, 55 N.Y.S.3d 665, 666 (App. Div. 2017).  However, Plaintiff not asserted that any of the events that led to his previous counsel's disbarment are related to his representation of Plaintiff, or Plaintiff's PERB claim.  Plaintiff has not even suggested that there are parallels between the conduct that led to his counsel's disbarment and his counsel's conduct representing Plaintiff.  Most significantly, Plaintiff has not identified any deficiencies in his counsel's representation in his PERB case.  *See, e.g., Rivera v. Butera*, No. 7-cv-7847, 2010 WL 2079708, at *4 (S.D.N.Y. May 13, 2010) (determining that the plaintiff had a full and fair opportunity to litigate partly because he failed to point to any specific failing of his attorney that rendered his representation deficient); *Carvalho v. Stevens*, No. 12-cv-128, 2013 WL 3742532, at *5 (S.D.N.Y. July 17, 2013) (finding a full and fair opportunity to litigate partly because the errors that the plaintiff attributed to her counsel did not suggest that she was prevented from presenting any evidence or arguments that might have turned the outcome in her favor).  Lacking any evidence that his counsel's disbarment for other reasons had any impact on the quality of his representation in Plaintiff's PERB proceeding, the Court does not conclude that Plaintiff's counsel's representation in the PERB proceeding was deficient.

Although Plaintiff's arguments against preclusion focus on the asserted inadequacy of his counsel during the PERB proceedings, the Court will briefly consider the other factors that are pertinent to a determination regarding whether he had a full and fair opportunity to litigate before the PERB.  *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 733–34 (2d Cir. 2001) (quoting *Schwartz v. Public Adm'r of Bronx Cnty.*, 24 N.Y.2d 65, 72 (1969)) ("In determining whether a party had a full and fair opportunity to litigate the issue . . . 'the various elements which make up the realities of litigation,' should be explored, including 'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.'").

The PERB hearing took place over the course of two days, during which Plaintiff himself testified and the parties presented and cross-examined witnesses, culminating in the ALJ's 12-page long decision analyzing the evidence and issues in detail.  AC ¶ 50; PERB Decision at 2; *see also Payson v. Bd of Educ. of Mt. Pleasant Cottage Sch.*, 2017 WL 4221455, at *11 (S.D.N.Y. Sept. 20, 2017) (finding parties had a full and fair opportunity to litigate PERB claim where hearing was held over four days, both parties were represented, and counsel presented and cross-examined witnesses and introduced evidence).  At Plaintiff's hearing before the PERB, the parties were represented by counsel, submitted exhibits, examined multiple witnesses, and submitted post-hearing briefs.  PERB Decision at 2; *see also Perry v. Metro. Suburban Bus Auth.*, 390 F. Supp. 2d 251, 265 (E.D.N.Y. September 28, 2005) (holding that the plaintiff did have an adequate opportunity to litigate before the PERB partly because each party was represented by counsel and there was no indication that any procedural rights were denied to either party).  Combined with the lack of evidence that Plaintiff's counsel provided inadequate representation in his case, these factors support the conclusion that Plaintiff had a full and fair opportunity to litigate his complaint before the PERB, precluding him from relitigating those claims in this case.

ii.   <u>Plaintiff is Not Collaterally Estopped from Relitigating the NYSDHR Decision</u>

1.   <u>Legal Standard</u>

The Court cannot determine on this record that the NYSDHR decision is also entitled to preclusive effect.  Again, the Court must determine whether (1) "there is an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) the party or one in privity had "a full and fair opportunity to contest the decision now said to be controlling."  *Staatsburg*, 72 N.Y.2d at 153 (internal quotation marks and citation omitted).  In considering whether a party has had a full and fair opportunity to litigate claims, courts should consider "the various elements which make up the realities of litigation," including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."  *Kosakow*, 274 F.3d at 734 (quoting *Schwartz*, 24 N.Y.2d at 72).  Additionally, if the prior proceeding was not before a court, but before an administrative agency such as the NYSDHR, courts should consider "whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired."  *Kosakow*, 274 F.3d at 734.  "Even when the requirements of collateral estoppel are satisfied, application of the doctrine is discretionary—it 'is grounded on concepts of fairness and should not be rigidly or mechanically applied.'"  *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 615 (S.D.N.Y. 2015), *aff'd*, 665 F. App'x 49 (2d Cir. 2016) (quoting *In re Sokol*, 113 F.3d 303, 306 (2d Cir. 1997)).

## 2. Application

Again, Plaintiff does not dispute that there is an identity of issues between the NYSDHR decision and some of the allegations in the Amended Complaint. In both the NYSDHR records and the Amended Complaint, Plaintiff accuses the Javits Center of discrimination and retaliation based on his race, including the incident with Mr. Bulic preceding Plaintiff's suspension in March of 2018. NYSDHR FOIL at ECF p. 3; AC ¶¶ 62–67. Therefore, the Court need only determine whether the NYSDHR proceeding afforded Plaintiff a full and fair opportunity to litigate his complaint.

The Court is unable to find that Plaintiff had a full and fair opportunity to litigate before the NYSDHR. At this stage of litigation, the Court has only limited facts about the NYSDHR proceeding, based on the materials included in the agency's response to the Javits Center's FOIL request. What the Court gathers from the NYSDHR records, the Javits Center's brief, and the Amended Complaint suggests that the only submissions to the NYSDHR were the complaint by Plaintiff and responses from the Javits Center that included some documents and video footage. There are no witness statements.[6] As in *Kosakow*, there is not clear evidence that Plaintiff had representation.[7] Similarly, the record does not demonstrate the extent of discovery taken before the NYSDHR, and there is no evidence of a or an opportunity to confront witnesses. 274 F.3d at 735–36 (finding that a DHR proceeding did not present a full and fair opportunity to litigate because there was no record of any discovery being conducted, nor was there any record of any hearing or interviews held); *see also Basak v. New York State Dep't of Health*, 9 F. Supp. 3d 383, 398 (S.D.N.Y. 2014) (concluding that the plaintiff's § 1983 claims were not barred by collateral estoppel premised

---

[6] In the NYSDHR case file checklist, under Respondent's Evidence, there are check marks next to "Exhibits" and "Respondent's Position Statement" but no check mark next to "Witness Statements." NYSDHR FOIL at ECF p. 25.
[7] The Javits Center contends that Plaintiff consulted with the same counsel who represented him in connection with his PERB charge based on a fax cover sheet from Plaintiff's counsel to the NYSDHR. JC Mot. to Dismiss at 5; NYSDHR FOIL at 140. However, the extent of Plaintiff's counsel's involvement in the NYSDHR proceedings is unclear based on a single fax cover sheet and the Court will not assume that Plaintiff had representation for the entirety of the proceedings.

on the no-probable-cause decision of the NYSDHR because the plaintiff appeared *pro se* and the NYSDHR held no hearings and gave no opportunity for discovery). Based on the information about the process that led to the NYSDHR's decision, the Court cannot conclude that it provided Plaintiff a full and fair opportunity to litigate. As a result, the Court cannot now determine that Plaintiff's § 1983 claims are precluded by the NYSDHR's determination. *See, e.g., Saudagar v. Walgreens Co.*, No. 18-cv-437, 2019 WL 498349, at *10 (S.D.N.Y. Feb. 8, 2019) (declining to find the plaintiff's claims precluded because of lack of information about NYSDHR proceedings).

While the Court need not reach this issue here, as noted in the Court's description of the agency's determination letter, it appears that, notwithstanding the ultimate conclusion that there was "no probable cause" for Plaintiff's claims, the agency also found that the rationale provided by the Javits Center in connection with its termination of him was a pretext for racial discrimination. None of the parties have addressed the schismatic nature of the NYSDHR's findings in their briefing here. But it raises a substantial question regarding whether the agency's determination letter can be read to preclude a claim for racial discrimination by Plaintiff.

### iii.   Plaintiff's Hostile Work Environment Claim Against the Javits Center is Dismissed

#### 1.   Legal Standard

Plaintiff's hostile work environment claim against the Javits Center is dismissed because he has failed to show that the allegedly hostile conduct of Javits Center employees towards him is properly attributable to the Javits Center. To assert a hostile work environment claim under federal law, a plaintiff must allege that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such

quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (ellipsis omitted). "[T]he plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted).

"§ 1983 discrimination claims parallel Title VII claims in many respects." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). Both statutes permit a plaintiff to bring hostile work environment claims. *Id.* The basic elements of such claims, whether pursued under Title VII or § 1983 are similar." *Id.* However, there are also substantial differences between claims brought under the two statutes, as the Second Circuit recently underscored in *Naumovski*.[8] "First, and most obviously, a plaintiff advancing a claim pursuant to § 1983 must plausibly allege that 'the alleged deprivation was committed by a person acting under color of state law.' Title VII has no such requirement." *Id.* (internal citations omitted). Here, the parties do not dispute that the Javits Center is a subdivision of New York State and a public benefit corporation. AC ¶ 6; JC Mot. to Dismiss at 16; *see also* N.Y. Pub. Auth. Law §§ 2560– 62 (establishing the New York Convention Center Operating Corporation as a public benefit corporation).

Most significantly here, § 1983 does not permit vicarious liability. *Naumovski*, 934 F. 3d at 212 ("while an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer through agency principles, § 1983 does not permit such vicarious liability."). Where, as here, the claim is asserted against a governmental agency, it is not

---

[8] "First, and most obviously, a plaintiff advancing a claim pursuant to § 1983 must plausibly allege that 'the alleged deprivation was committed by a person acting under color of state law.' Title VII has no such requirement. Second, unlike a Title VII claim, which may be brought only against the employing entity, a § 1983 claim "can be brought against an[y] individual' responsible for the discrimination. Third, while an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer through agency principles, § 1983 does not permit such vicarious liability. 'If [an individual] defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant.'" *Naumovski v. Norris*, 934 F.3d at 212 (internal citations omitted). Fourth, "a plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment." *Id.* at 214.

liable for its employees' conduct on the basis of *respondeat superior*. "A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). This can be shown in a number of ways: by proving the existence of (1) a formal policy, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of persons with whom municipal employees will come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Falu v. Cnty. of Orange*, 814 F. App'x 655, 658 (2d Cir. 2020).

## 2. Application

Plaintiff has failed to plead facts that would permit the imputation of the conduct that forms the basis of his hostile work environment claims to the Javits Center. The conduct that forms the basis of his claim was committed by lower level employees of the Javits Center. Plaintiff has failed to plead that any of those employees had a senior role in the Javits Center, such that they could be viewed as policy makers. Similarly, Plaintiff has not shown that the conduct at issue is the result of a policy or custom of Javits Center. Nor has he pleaded that the conduct of the individuals at issue was attributable to a failure of training or supervision. In sum, even if the conduct alleged by Plaintiff constituted a hostile work environment, Plaintiff has failed to plead that the Javits Center should properly be held to be liable for the allegedly discriminatory conduct by its low-level employees. Plaintiff assumes that the Javits Center is vicariously liable for the conduct of all of its employees, but that is not the case for claims under § 1983.

Moreover, Plaintiff's briefing fails to respond to the Javits Center's arguments regarding his failure to allege conduct properly attributable to it. Therefore, the Court will thus consider that claim conceded. *See AT & T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812 (NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (finding that plaintiff's "silence concedes the point" where it failed to discuss opponent's argument in its opposition brief); *In re UBS AG Secs. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (same); *see also Jennings v. Hunt Cos.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) ("A district court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

iv.   <u>Plaintiff's Discrimination and Retaliation Claims May Proceed</u>

Plaintiff bases his discrimination claim against the Javits Center on the contention that it subjected Plaintiff to treatment such as physical intimidation and arbitrary disciplinary measures, culminating in his termination in April of 2018. AC ¶¶ 71, 89. Plaintiff bases his retaliation claim against the Javits Center on the contention that it suspended and later terminated Plaintiff because of his race in response to Plaintiff's prior PERB complaint about discriminatory treatment and harassment. AC ¶ 71. The Javits Center has not presented any argument for the dismissal of these claims apart from its arguments regarding the preclusive effect of the NYSDHR's determination. JC Mot. to Dismiss at 12. As explained above, the Court is not able to determine at this time that Plaintiff is precluded from relitigating the issues raised before the NYSDHR. Lacking any argument to dismiss the claims on any other basis, they survive this motion.

## VI.   LEAVE TO AMEND

Plaintiff's claims against the Carpenters Council under § 1981 for hostile work environment and discrimination, as well as his claim against the Javits Center under § 1983 for hostile work environment, are dismissed. The claims against the Javits Center under § 1983 for discrimination and retaliation may proceed. The Court grants Plaintiff leave to replead the dismissed claims. *See*

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case.  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).  Any amended counterclaim must be filed no later than fourteen days from the date of this order.

## VII.   CONCLUSION

For the reasons stated above, the Carpenters Council's motion to dismiss is GRANTED in its entirety.  The Javits Center's motion to dismiss is GRANTED in part and DENIED in part.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 41 and 45.

SO ORDERED.

Dated:  September 23, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge