```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
  EDWARD SAUNDERS,                                  :
                                                    :
                              Plaintiff,            :
                -against-                           :       1:20-cv-5805-GHW
                                                    :
  NEW YORK CONVENTION CENTER                        :       MEMORANDUM OPINION &
  OPERATING CORPORATION d/b/a Jacob K.              :              ORDER
  Javits Convention Center, NEW YORK CITY           :
  DISTRICT COUNCIL OF CARPENTERS                    :
                                                    :
                              Defendants.           :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2022

## I. INTRODUCTION

Plaintiff Edward Saunders filed this suit in July of 2020 after years of alleged discrimination by his employer, the New York Convention Center Operating Corporation (the "Javits Center"), and his union, the New York City District Council of Carpenters ("Defendant" or the "Carpenters Council"). Plaintiff asserts that the Javits Center and the Carpenters Council discriminated against him on the basis of his race, ultimately leading to his termination in April of 2018. He asserts claims against the Carpenters Council discrimination pursuant to 42 U.S.C. § 1981 and against the Javits Center pursuant to 42 U.S.C. § 1983 based on their alleged discriminatory conduct. In a previous opinion, the Court dismissed in part Plaintiff's claims against the Javits Center, and dismissed all of Plaintiff's claims against the Carpenters Council.

Plaintiff amended his complaint to bolster his claims against the Carpenters Council. The Carpenters Council moved to dismiss. Because Mr. Saunders has failed to plead that any breach of the Carpenters Council's duty of fair representation was motivated by discriminatory animus, the Carpenters Council's motion to dismiss the § 1981 claim against it is granted.

## II. BACKGROUND

### A. Factual Background[1]

The majority of the allegations in Plaintiff's amended complaint are identical to allegations that were present in his initial complaint. The Court has considered Plaintiff's newly pleaded allegations in their entirety. However, for the sake of efficiency, the following description of the facts pleaded in the amended complaint focuses primarily on Plaintiff's newly pleaded allegations. The Court refers the reader to its previous opinion for a more comprehensive narrative of the events at issue in this litigation. *See generally Saunders v. New York Convention Center Operating Corp. et al*, No. 1:20-cv-5805, 2021 WL 4340792 (S.D.N.Y. Sept. 23, 2022) ("*Saunders I*").

Plaintiff's newly pleaded allegations principally regard instances in which African-American Carpenters Council members other than Plaintiff were treated differently than their white peers. For instance, Plaintiff alleges that in early 2017, an African-American carpenter "was terminated after arguing with a white carpenter" while the white carpenter "was not punished at all." SAC ¶ 25. Another "African-American carpenter," Plaintiff asserts, "had an altercation with a white coworker and was suspended but the coworker was not," and later, that that individual was terminated after he threatened to sue his employer. *Id.* ¶ 32. Further, according to Plaintiff, an African-American carpenter named Lorraine Alvarado was walked off the floor after arguing with a white coworker who was not punished, and the Union "refused" to file a grievance on her behalf. *Id.* ¶ 39.[2]

Plaintiff also alleges that he overheard Javits Center employees and Carpenters Counsel making racist or derogatory remarks. Plaintiff heard his direct supervisor tell several Carpenters

---

[1] The facts are largely drawn from Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 56, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] In addition, Plaintiff asserts that "another African-American carpenter . . . was terminated after being falsely accused of theft although . . . video evidence disproved the accusation." *Id.* ¶ 27.

Counsel members that Plaintiff was a "black f***ing rat" and the others laughed and agreed. *Id.* ¶ 66. He also asserts that several African-American carpenters "observed and heard the JAVITS CENTER's First Floor Manager, an older white male, talking gleefully about how much he loved watching Clint Eastwood's character in the movie 'Gran Turino' [sic] because of how racist he was." *Id.* ¶ 30. Plaintiff further alleges that a white Carpenters Council shop steward told an African-American apprentice carpenter: "for all we do for your kind, you ought to give us some money and get us coffee." *Id.* ¶ 44.

Plaintiff also supplements his prior allegations regarding an alleged reduction in his hours. Plaintiff states that the decision to lower his hours "could only have been at the behest of [John] Diodato—who as shop steward had the de facto power to control UNION members' work schedules." *Id.* ¶ 37. According to Plaintiff, "the Business Agent . . . responsible for the JAVITS CENTER, whose first name was Jeremy (and whose last name is unknown to Plaintiff) knew this was regularly happening, but tolerated it." *Id.*

### B. Procedural History

Plaintiff filed his first complaint on July 28, 2020. Dkt. No. 5. On October 27, 2020, The Carpenters Council and the Javits Center each moved to dismiss the claims against them. Dkt. Nos. 29, 32. In response, Plaintiff amended his complaint on November 17, 2020. Dkt. No. 34. In that amended complaint, Plaintiff asserted claims under 42 U.S.C. § 1981 against the Carpenters Council and claims under 42 U.S.C. § 1983 against the Javits Center. *Id.* ¶¶ 87-88. On January 25, 2021, Defendants again moved to dismiss the claims against them. Dkt. Nos. 41, 45.

The Court granted the Carpenters Council's motion to dismiss. It determined that Plaintiff had not adequately pleaded that the Carpenters Council was motivated by animus toward his protected status and therefore dismissed his § 1981 claims against it with leave to replead. *Saunders I*, 2021 WL 4340793, at *16.

The Court granted in part and denied in part the Javits Center's motion to dismiss. Concluding that Plaintiff had failed to plead that the allegedly hostile conduct of Javits Center employees toward him was properly attributable to the Javits Center, the Court dismissed Plaintiff's hostile work environment claims against it under § 1983. However, because the Javits Center did not present any argument for dismissal of the discrimination and retaliation claims against it, the Court allowed those claims to proceed. *Id.* at *14-16.

Plaintiff again amended his complaint on October 21, 2021. *See* SAC. On December 17, 2021, the Carpenters Council moved to dismiss the claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 62 ("Mot."). Plaintiff opposed the motion on December 23, 2021. Dkt. No. 63 ("Opp'n"). The Carpenters Council replied on January 6, 2022. Dkt. No. 64 ("Reply").

### III.   LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F. 3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept" as true a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly,* 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the

reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. City of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York,* 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230 (2d Cir. 2016). A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia,* 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

## IV.   DISCUSSION

Plaintiff has not adequately pleaded a claim for discrimination against the Carpenters Council under § 1981. "Section 1981 provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.'" *Littlejohn v. City of New York*, 795 F. 3d 297, 320 (2d Cir. 2015) (quoting 42 U.S.C. § 1981). Employment discrimination claims against unions are analyzed differently from claims against employers, in that claims against unions are grounded in the union's duty of fair representation to its members. *Hill v. City of New York*, 136 F. Supp. 3d 304, 339 (E.D.N.Y. 2015), order amended and supplemented, No.

13-cv-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (citing *Klaper v. Cypress Hills Cemetery*, 10 CV 1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012)).  In order to prevail on his discrimination claim against the union, Plaintiff must plead first, that the union breached its duty of fair representation, and, second, that the union's actions were motivated by animus toward the plaintiff's protected status.  *Id.*; *see also Vaughn v. Am. Tel. & Tel. Co.*, 92 F. App'x 21, 23 (2d Cir. 2004) (summary order) ("To establish a prima facie claim of discrimination against a union in connection with grievance representation, a plaintiff is required to show that: (1) the [employer] committed a violation of the collection bargaining agreement with respect to plaintiff; (2) the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) there was some indication that the Union's actions were motivated by discriminatory animus.").

To plead a breach of a union's duty of fair representation, "the challenging members must establish two elements.  *First*, they must prove that the union's actions or inactions 'are either arbitrary, discriminatory, or in bad faith,'" *Vaughn v. Air Line Pilots Ass'n Int'l*, 604 F.3d 703, 709 (2d. Cir. 2010) (emphasis in original) (quoting *Air Lines Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).  "*Second*, the challenging members must 'demonstrate a causal connection between the union's wrongful conduct and their injuries.'"  *Id.* (emphasis in original) (quoting *Spellacy v. Airline Pilots Assn' Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).  Courts reviewing such allegations will be "'highly deferential, recognizing the wide latitude that [unions] need . . . effective performance of their bargaining responsibilities.'"  *Id.* (quoting *O'Neill*, 499 U.S. at 78).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'"  *Id.* (quoting *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted)).  Conduct is irrational only "when it is without a rational basis or explanation."  *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45-46 (1998).  "Moreover, '[t]actical errors are insufficient to show a

6

breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.'" *Vaughn*, 604 F.3d at 709 (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)).

With respect to the requisite showing of animus, "at the pleadings stage of an employment discrimination case, a plaintiff has a 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 310). One way to show animus on the part of a union is through the "acquiescence theory," to which Plaintiff points in his opposition. *See* Opp'n at 4.

"[A] union's tacit acquiescence [in] or ratification [of an employer's discriminatory conduct] . . . can serve as a basis for an employment discrimination claim . . . if the plaintiff sufficiently alleges that this acquiescence or ratification was 'arbitrary, discriminatory, or in bad faith'—that is, if the acquiescence or ratification was establishes a breach of the union's [duty of fair representation]." *Klaper*, 2012 WL 959403, at *11-12 (collecting cases); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under . . . § 1981, regardless of whether, as a subjective matter, its leaders were favorable disposed towards minorities."). Judge Chen of the Eastern District of New York thoughtfully explained the premise of the acquiescence theory as a pathway to illustrate a union's discriminatory animus, as follows:

> [T]his theory stems from the principle that "[a] § 1981 violation may be established not only via presentation of evidence regarding defendant's affirmative acts, but also by evidence regarding defendant's omissions when defendant is under some duty to act." In other words, the acquiescence theory permits an inference of discriminatory intent based on the union's disregard of an employer's discrimination.

*Hill*, 136 F. Supp. 3d 304 at 340 (internal citations omitted).

### a) Plaintiff Adequately Pleads that the Union's Inaction was Arbitrary, Discriminatory, or in Bad Faith

With regard to the first element—that the union's actions or inactions "are either arbitrary, discriminatory, or in bad faith"—the Court previously commented that "[a] breach of duty of fair representation "occurs when the union handles a 'meritorious grievance . . . in perfunctory fashion.'" *Saunders I*, 2021 WL 4340793, at *10 (quoting *Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990)). Under that standard, the Court determined that Plaintiff had "not adequately plead[ed] that the union violated its duty of fair representation to him, with the exception of its response to Plaintiff's complaints regarding his suspension and termination." *Id.*

Plaintiff's newly pleaded allegations do not alter than conclusion. Plaintiff re-alleges that he "called the CARPENTER COUNCIL'S Inspector General" about his suspension and that the Inspector General "promised to look into the matter, but Plaintiff never heard back from him or anyone else" at the Union. SAC ¶ 73. As was the case with regard to Plaintiff's prior complaint, "[t]he complaint does not suggest that the union's inaction was the result of an informed decision or tactical error that would benefit from deferential review by the Court." *Saunders I*, 2021 WL 4340793, at *10. Accordingly, it is still the case that Plaintiff sufficiently pleads that the union's inaction was perfunctory, and thus, arbitrary. Thus, Plaintiff sufficiently alleges the first element.

### b) Plaintiff Does Not Sufficiently Plead Discriminatory Animus

However, Plaintiff does not sufficiently plead that the Union's inaction was motivated by discriminatory animus. In large part, he reiterates identical allegations to those the Court previously found to be conclusory. *See, e.g.*, Opp'n at 8 (arguing that the allegations in SAC ¶¶ 68–73, which are identical to those in paragraphs 51–56 in the amended complaint, are sufficient to state a claim). Those allegations remain inadequate because, as they were before, the allegations are conclusory and devoid of facts that would give rise to even a minimal inference of discriminatory animus. *See, e.g.*, SAC ¶ 36 ("[The Carpenters Council] was consistently derelict in its avowed duty to provide fair

representation to Plaintiff and other African-Americans . . . ."); *Id.* at ¶ 20 (noting that Carpenter's Council members "were subjecting [Plaintiff] to unwanted and unwelcome discriminatory comments and conduct"). As before, those allegations are too conclusory to sustain his claim. *See Saunders I*, 2021 WL 4340793, at *10 ("The complaint relies on conclusory allegations and scattered incidents from Plaintiff's entire history, which do not give rise to even a minimal inference that the union was motivated by discriminatory animus toward him.").

Nevertheless, Plaintiff argues that he has sufficiently pleaded discriminatory animus because the second amended complaint "lists no fewer than six instances where Black employees were . . . punished for arguments while their white counterparts were not." Opp'n at 8. That argument is unavailing. As an initial matter, allegations regarding three of those instances were included in Plaintiff's previous complaint, and found to be insufficient. SAC ¶¶ 26, 28, 29; *Saunders I*, 2021 WL 4340793, at *10–11. Second, the focus of this motion is not the disciplinary actions of Plaintiff's employer. It is on the conduct of the Carpenters Council union. Allegations that the employer disciplined a white person while not doing the same for an African-American person do not imply that the Carpenters Council—a separate actor—also acted in a discriminatory manner.

The newly alleged incidents do not tip the scale in Plaintiff's favor individually or in the aggregate with the other facts pleaded. Plaintiff first alleges that "an African-American carpenter . . . was terminated after arguing with a white carpenter" and the white carpenter was not punished, SAC ¶ 25; and that an "African-American carpenter . . . was terminated after being falsely accused of theft" even though video evidence disproved the allegation, *id.* ¶ 27. Plaintiff does not, however, allege that those individuals requested any action of the Carpenters Council or that the Carpenters Council had some other duty to assist those individuals. Nor does Plaintiff provide any further details regarding the events themselves to suggest that the Carpenters Council's inaction was the result of discriminatory animus. Without sufficient factual detail, those allegations do not suggest

9

even a minimal inference of discriminatory animus on the part of the Carpenters Council. *See Moore v. City of New York*, No. 15CV6600GBDJLC, 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017), report and recommendation adopted, No. 15CIV6600GBDJLC, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) (concluding that the plaintiff had not pleaded a minimal inference of discrimination because "[b]eyond merely identifying himself as an African-American male and noting that a number of Defendants involved in the alleged adverse actions suffered by [the plaintiff] are 'white' and/or 'female,' [the plaintiff] proffers no other facts to support his claim that Defendants took action against him because of his membership in a protected class").

Indeed, Plaintiff makes only one allegation concerning the Carpenters Council's reaction to any of these incidents. He asserts that a Black carpenter, Lorraine Alvarado, was walked off the floor after fighting with a white coworker (who was not punished), and that Ms. Alvarado "asked the UNION to file a grievance on her behalf, but it refused." SAC ¶ 39. First, that allegation by itself does not suggest that the Carpenters Council acted in a discriminatory manner. Without more, the mere fact that the union did not do what the member of a protected class asked it to do does not give rise to an inference of discrimination.[3]

Further, Plaintiff's allegations regarding Ms. Alvarado are too vague to support a claim that racial animus caused the Carpenters Council's failure to respond to *his* complaints. Plaintiff does not allege, for instance, the Carpenter's Council decisionmakers involved in the incidents were similar, that occurred during similar periods of time, or that they involved a similar grievance process. Accordingly, Plaintiff's allegations are too vague to draw even a minimal inference that the

---

[3] Plaintiff does not allege that the Union failed to file grievance on behalf of similarly situated white employees, nor does he allege any other details that would suggest that the Union failed to act on account of the Ms. Alvarado's race. *Cf. Richards v. Dep't of Educ. of the City of N.Y.*, No. 21-CV-338 (LJL), 2022 WL 329226, at *12 (S.D.N.Y. Feb. 2, 2022) ("Because the pleadings do not show that Plaintiff was similarly situated to these other employees, the allegations fail to raise a minimal inference of discrimination based on race or religion."). The mere fact that the Union failed to file a grievance on the part of Ms. Alvarado, without more, is an insufficient basis to plead that such a failure was motivated by discriminatory animus.

10

Carpenters Council's inaction in response to Plaintiff's complaints was motivated by discriminatory animus.  *See McLeod v. 1199 SEIU United Healthcare*, No. 1:17-CV-7500-GHW, 2019 WL 1428433, at *9 (S.D.N.Y. Mar. 29, 2019) (requiring Plaintiff to plead facts supporting an inference that the reason for a union's conduct toward the plaintiff was the plaintiff's protected status); *Richards v. City of New York*, No. 1:19-CV-10697-MKV, 2021 WL 4443599, at *7 (S.D.N.Y. Sept. 28, 2021) (concluding that the plaintiff had not sufficiently alleged discriminatory animus where the plaintiff did not "plausibly allege a causal connection between [a discriminatory] remark and his termination or any other adverse employment action").

Plaintiff also makes a number of allegations regarding racist comments made by Carpenters Council members.  In addition to the allegations deemed insufficient in the previous complaint, Plaintiff adds that "a white CARPENTERS shop steward named Jack" told a Black employee "for all we do for your kind, you ought to give us some money and get us coffee."  SAC ¶ 44.  While that statement could certainly be interpreted as racist, Plaintiff does not allege that the "shop steward named Jack" played any role in the Union's failure to respond Plaintiff's complaints.  Without any indication that "Jack" was at all associated with the Union's inaction with regard to Plaintiff's complaints, that allegation is insufficient to support a § 1981 claim.  *See Richards*, 2021 WL 4443599, at *7 (concluding that the plaintiff had not sufficiently pleaded discriminatory animus based on the discriminatory statements of "a low-level co-worker who was not involved in Plaintiff's termination").[4]

---

[4] In his opposition, Plaintiff makes no mention of his allegation that "Black carpenters were . . . sent home for the day if they were late in paying their union assessment fees, while white employees who were similarly late in paying their assessment fees were not similarly walked off the floor."  SAC ¶ 40.  Even if he had, that allegation is too vague to support a claim.  Plaintiff does not identify whether the Carpenter Council had a role in "walking employees of the floor," or if so, what that role was.  Nor does Plaintiff allege any factual details that would suggest that the Carpenters Councils' role in walking Black members off the floor—whatever that role might be—indicates that the Carpenters Council's failure to respond to *Plaintiff's* complaints was born from discriminatory animus.  *See McLeod*, 2019 WL 1428433, at *9 (remarking that a plaintiff must plead that "the reason" the union failed to take action "was because of [the plaintiff's membership in a protected class]").  In short, that allegation is too vague to support even a minimal inference of discriminatory animus.

11

Similarly, Plaintiff alleges that he "heard his direct Supervisor, Paul Hannah, commenting to several UNION members . . . that [he was] a 'black f***ing rat,'" and that "[t]he others laughed and agreed." SAC ¶ 66.  In analyzing whether an individual was discriminated against in an employment context, "it is well established in the employment discrimination context that '[c]omments made by non-decision-makers, such as supervisors or co-workers, are rarely given great weight.'" *Karupaiyan v. CVS Health Corp.*, No. 19 CIV. 8814 (KPF), 2021 WL 4341132, at *13 (S.D.N.Y. Sept. 23, 2021) (quoting *Martin v. City Univ. of N.Y.*, No. 17 Civ. 6791 (KPF), 2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018)).  That Ms. Hannah and indiscriminate members of a large union—members who are not alleged to have any authority with regard to the Carpenters Council's response to member complaints—made racist comments or laughed in response to racist comments is insufficient to plead that the Union's inaction with regard to Plaintiff was born from discriminatory animus.  *See Fukelman v. Delta Air Lines, Inc.*, No. 18CV00002PKCPK, 2020 WL 2781662, at *3 (E.D.N.Y. May 29, 2020) ("It is not enough for Plaintiffs to allege that, over the course of years, a handful of unnamed co-workers and supervisors have made offensive comments about certain racial, ethnic, or religious groups; that Plaintiffs allege a stew of discriminatory animus does not impart flavor to every disciplinary action taken against Plaintiffs and thereby transform those actions, even if unjustified, into discriminatory adverse employment actions.").

Finally, as the Court determined in its previous decision, Plaintiff cannot rely on his "acquiescence theory" to plead discriminatory animus.  *See Saunders I*, 2021 WL 4340793 at *11.[5]  Specifically, Plaintiff claims that "[a]ll [he] has to plead are facts indicating that the Union acquiesced—tacitly—in a discriminatory pattern and practice" and that his allegations have cleared

---

[5] The parties devote significant discussion to whether Plaintiff has sufficiently pleaded "collusion" or "conspiracy."  *See* Mot. at 20–21, Opp'n at 13–14.  The Court will construe those arguments to speak to Plaintiff's acquiescence theory because, as Plaintiff points out, "the SAC nowhere mentions the words 'conspiracy' or 'collusion.'" Opp'n at 14.  Plaintiff does not bring a cause of action as would be required to plead a legal conspiracy, nor does he expressly assert that Defendants impermissibly "colluded" with each other.

12

this bar. Opp'n at 5. That is a mischaracterization of the relevant standard. In order to survive a motion to dismiss, Plaintiff "'must plead some facts that . . . would give rise to the conclusion . . . that the *reason* the union refused to grieve' [his] termination was because of [his] membership in a protected class, 'as opposed to one of the many perfectly legitimate reasons why a union would decide not to proceed with a particular grievance.'" *McLeod*, 2019 WL 1428433, at *9 (quoting *Robinson v. Macy's*, 14-CV-4937, 2014 WL 6997598, at *10 (S.D.N.Y. Dec. 5, 2014) (emphasis in original)). Plaintiff must do more than plead facts indicating that the Union failed to intervene in a discriminatory practice. He must plead facts supporting an inference that the Carpenters Council's non-response to his suspension and termination was *because of* his race. Given that Plaintiff has not offered any factual details at all by which to assess the Union's action or inaction, he has failed to plead facts that give rise to an inference of discriminatory motivation.

Therefore, because the SAC fails to plead facts that give rise to an inference of discriminatory intent, Plaintiff's § 1981 claim against the Carpenters Council is dismissed.

## V.     LEAVE TO AMEND

The Court denies Plaintiff leave to amend the dismissed claims. Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Here, Plaintiff has already amended his complaint once, and has done so unsuccessfully. Any attempt to amend his complaint a third time would be futile, and Plaintiff is denied leave to amend.

## VI. CONCLUSION

For the reasons stated above, the Carpenters Council's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 62.

SO ORDERED.

Dated: August 19, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge